UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LAHAI KANU,
    Petitioner,

vs.

SHERIFF BUTLER COUNTY,
    Respondent.

Case No. 1:16-cv-756

Black, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Petitioner, who is incarcerated at the Butler County Jail in Hamilton, Ohio, pursuant to detention orders issued by United States Immigration and Customs Enforcement (ICE), has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (*See* Doc. 1). On September 14, 2016, the United States Attorney, Secretary of the Department of Homeland Security (DHS), and ICE Field Office Director, filed on respondent's behalf a return of writ and motion to dismiss the petition. (Doc. 7). Petitioner has filed a memorandum in response to the respondent's submission and as additional support for his petition. (Doc. 8). On October 31, 2016, the respondent filed a brief in reply to petitioner's memorandum as directed by the Court in an order issued October 19, 2016. (*See* Docs. 10, 11). The matter is now ripe for disposition.

    **I. Background**

Petitioner is a citizen of Sierra Leone, who was admitted to the United States "with an immigrant visa as a lawful permanent resident" in June 2000. (*See* Doc. 7, Ex. A, ¶ 4).

On or about May 5, 2009, petitioner was placed in removal proceedings and charged with removability under 8 U.S.C. § 1227(a)(2)(A)(ii) based on two separate convictions in the Franklin County, Ohio, Court of Common Pleas for aggravated trespass in December 2007 and receiving stolen property in January 2009. (*See id.*, ¶ 5 & Ex. 1). Petitioner, who was assisted

by counsel, "conceded his removability as charged and filed an application for cancellation of removal." (*Id.*, ¶ 6). On September 15, 2009, an immigration judge in Cleveland, Ohio, denied petitioner's application and issued an order for petitioner's removal to Sierra Leone. (*See id.*, ¶ 7 & Ex. 2; *see also* Doc. 11, Ex. A, ¶ 7). On December 15, 2009, the Board of Immigration Appeals dismissed petitioner's appeal from that decision. (Doc. 7, Ex. A, ¶ 8 & Ex. 3).

ICE was unable to obtain the necessary travel documents for petitioner's removal at that time. (Doc. 11, Ex. A, ¶ 8). Therefore, on or about January 13, 2010, ICE released petitioner, who had been subject to "mandatory detention" during the removal proceedings, "under an order of supervision with instructions to apply for a passport or other suitable travel documents." (*See* Doc. 7, Ex. A, ¶¶ 9-10 & Ex. 4). Thereafter, on June 14, 2011, "while under the order of supervision and subject to a final removal order," petitioner was convicted of attempted felonious assault and robbery upon entry of a guilty plea in a new criminal case filed in March 2011 with the Franklin County Common Pleas Court. Petitioner was sentenced to an aggregate prison term of five years in that matter. (*Id.*, ¶ 11 & Ex. 5). On or about January 14, 2016, petitioner "was released from state custody upon completion of his criminal sentence and transferred into ICE custody pending removal from the United States." (*Id.*, ¶ 12).

Petitioner has remained in ICE custody since January 14, 2016. On or about January 29, 2016, immigration officials began the process for petitioner's removal by submitting "a new travel document request packet to the Embassy of Sierra Leone in Washington, D.C." (Doc. 11, Ex. A, ¶ 9). On April 29, 2016, ICE issued a decision to continue petitioner's detention while it continued to "actively work[] on obtaining a travel document for [his] removal to Sierra Leone." (Doc. 7, Ex. A, ¶ 13 & Ex. 6).

Petitioner was interviewed by Sierra Leone Embassy officials in May 2016. (*See id.*, Ex. 7, at PAGEID#: 95; Doc. 11, Ex. A, ¶ 10). On July 12, 2016, the Sierra Leone Embassy

informed ICE's Headquarters Office of Removal and International Operations (HQ RIO) of their finding that petitioner "is Sierra Leonean" and of their willingness "to issue an Emergency Travel Certificate (ETC) once they received their required documentation for ETC issuance (ETC application, ETC fee, and travel itinerary)." (Doc. 11, Ex. A, ¶ 11; *see also* Doc. 7, Ex. 7, at PAGEID#: 95). On July 20, 2016, ICE issued a second decision to continue petitioner's detention while it continued to work "with the government of Sierra Leone to secure [the] travel document for [petitioner's] removal," which was "expected." (Doc. 7, Ex. A, ¶ 14 & Ex. 7).[1]

On or about August 10, 2016, upon receipt of the "required documentation," an ETC was issued by the Sierra Leone Embassy in Washington, D.C., and provided to a HQ RIO officer "in-person" at the embassy for the purpose of effectuating petitioner's removal to Sierra Leone. (Doc. 11, Ex. A, ¶ 12; *see also* Doc. 7, Ex. A, ¶ 15 & Ex. 8). The certificate, which authorizes petitioner's travel to Sierra Leone via Morocco, is currently valid, with an expiration date of February 9, 2017. (*See* Doc. 7, Ex. A, ¶ 15 & Ex. 8). The certificate requires that petitioner's signature or left thumb print also be provided for identification purposes. (*See id.*). Soon after the ETC was obtained by ICE, travel arrangements were made for petitioner "to be removed from the United States on August 23, 2016 via officer escort on a commercial flight to Freetown Lungi, Sierra Leone via Casablanca, Morocco." (*See id.*, ¶ 16 & Ex. 9).

The removal scheduled for August 23, 2016 did not take place. Luke Affholter, an ICE Deportation Officer, has submitted a "Declaration" to address that removal effort based on his "personal knowledge, information obtained from other individuals employed at ICE, and information obtained from records maintained at ICE." (*See* Doc. 11, Ex. B, ¶¶ 1-3). Affholter avers that on August 17, 2016, petitioner was served with and refused to sign "a Form I-229(a),

---

[1] It appears from the record that the second decision to continue petitioner's detention was based on the recommendation of a HQ RIO immigration officer, who stated as support for petitioner's "continued detention" that "TD issuance and removal is expected in the reasonably foreseeable future." (*See* Doc. 7, Ex. 7, at PAGEID#: 95).

Warning for Failure to Depart, and accompanying instruction sheet, requiring [him] to comply with the immigration judge's order of removal." (*Id.*, ¶ 4 & Ex. 1). On August 23, 2016, petitioner was released from the Butler County Jail to the custody of ICE officers who had arrived at the jail to transport petitioner to the airport in Covington, Kentucky for the "commercial removal flight." (*Id.*, ¶ 5). "While in the booking area of the Butler County Jail, ICE officers instructed [petitioner] to sign and fingerprint the Emergency Travel Certificate (No. 2687) that was issued by the Embassy of Sierra Leone in Washington, D.C., on August 10, 2016." (*Id.*). Petitioner refused to do so and "express[ed] that the travel document was not legitimate and he could not be removed to Sierra Leone." (*Id.*, ¶ 6). Affholter states:

> Because this removal travel itinerary involved a commercial airline, voluntary cooperation of the alien being removed is necessary to successfully board the aircraft and effect the removal. After repeated ICE attempts to explain the legitimacy of the travel document, as well as the consequences for failing to comply with his removal, [petitioner] persisted in his refusal. The removal was cancelled, and [petitioner] was booked back into the custody of Butler County Jail at that time.

(*Id.*).

On August 30, 2016, petitioner was served with a "Notice of Failure to Comply Pursuant to 8 CFR § 241.4(g)," which had been issued by ICE after the attempt to remove petitioner on August 23, 2016 failed. (*See* Doc. 7, Ex. A, ¶ 18 & Ex. 10; *see also* Doc. 11, Ex. B, ¶¶ 7-8 & Ex. 2). In the notice, petitioner was informed that he would not be released from ICE custody and that the removal period was extended because he had refused to board the scheduled flight, had "failed to comply with [his] obligation" and was "acting to prevent [his] removal from the United States." (Doc. 11, Ex. B, ¶ 7 & Ex. 2). The notice further provided that petitioner would "remain in ICE custody until [he] demonstrate[s] that [he is] making reasonable efforts to comply with the order of removal and . . . [is] cooperating with ICE's efforts to remove [him]."

4

(*Id.*). Petitioner was also warned of possible criminal prosecution if he continued in his actions to prevent his removal. (*See id.*).

Affholter has averred that when the non-compliance notice issued in August 2016, the matter was classified as a "Failure to Comply ('FTC') case," which is handled as follows:

> [A] form I-229(a), Warning for Failure to Depart, and an instruction sheet which explains case specific requirements for compliance is served every 30 days. At the time of service, ICE will solicit whether the alien will comply with removal efforts, should removal travel be attempted. If the alien indicates that they will comply with removal, then the removal travel is submitted for booking. The original Notice of Failure to Comply Pursuant to 8 CFR § 241.4(g) is also re-served on the alien every 30 days until compliance is obtained.

(*Id.*, ¶ 9).

On September 14, 2016 and October 19, 2016, the requisite forms to be served "every 30 days" in FTC cases were sent to the Butler County Jail for service on petitioner. (*See id.*, ¶¶ 10, 12 & Exs. 3-4). On both occasions, when presented with the forms, petitioner refused to sign them and stated to ICE officers that he would not cooperate with removal. (*Id.*, ¶¶ 11-12 & Exs. 3-4). Petitioner also expressed on one of those occasions that he did "not believe that the travel document in ICE possession is legitimate." (*Id.*, ¶ 11).

Affholter states that "ICE remains in possession of the Emergency Travel Certificate (No. 2687) for [petitioner] which is valid until February 9, 2017, and there are no impediments to removal to Sierra Leone, other than [petitioner's] willful failure to cooperate with ICE's removal attempts." (*Id.*, ¶ 13). Affholter further avers:

> If [petitioner] indicates to ICE officers that he will comply with removal then ICE will re-book commercial travel to Sierra Leone. If [petitioner] continues to refuse to comply with removal efforts via standard commercial travel then his removal travel will be scheduled for an upcoming ICE charter flight which occurs periodically throughout the year.

(*Id.*, ¶ 14). Joseph D. Simon, a HQ RIO Detention and Deportation Officer, has also confirmed in a "Declaration" that "[a]s of today's date, there do not appear to be any impediments to

5

effecting [petitioner's] removal in the reasonably foreseeable future." (*Id.*, Ex. A, ¶ 13). Simon states:

> ICE routinely removes aliens to Sierra Leone and removals took place normally until the outbreak of Ebola, and removals have resumed since Sierra Leone was declared Ebola-free by the World Health Organization in November 2015. As aforementioned, embassy officials have confirmed [petitioner's] nationality and have issued a travel document for his return to Sierra Leone. Therefore, ICE anticipates that [petitioner's] removal will be effected in the reasonably foreseeable future.

(*Id.*).

## II. Habeas Petition

Petitioner commenced the instant habeas corpus action in July 2016, before ICE issued the second decision on July 20, 2016 to continue petitioner's detention pending receipt of "expected" travel documents. (*See* Doc. 1). In the petition, petitioner presents the following grounds for relief:

> **Ground One:** My continued detention violates my right to substantive due process through a deprivation of the core liberty interest, in freedom from bodily restraint. My continued detention by ICE officials is "unlawful" and contravenes 8 U.S.C. § 1231(a)(6) as int[er]preted by the Supreme Court.
>
> **Ground Two:** According to section 241(a) Detention Release and Removal of Alien ordered removed, when an alien [is] ordered removed, the Attorney General shall remove the alien from the U.S. If they cannot remove[] me with[in] the removal period after I've been in custody for 6 months, I should be subjected to supervision release[] under regulation prescribed by the Attorney General. This required me to appear before an immigration officer periodically for identification.
>
> **Ground Three:** Under the Due Process Clause of Fifth Amendment, an alien is entitled to a timely and meaningful opportunity to demonstrate that he should not be detained. In this case, I . . . ha[ve] been denied that opportunity. ICE does not make decisions concerning alien's custody status in a neutral and impartial manner. The failure of Respondent to provide a neutral decision-maker to review the continued custody of me violates my rights to procedural due process.
>
> **Ground Four:** I . . . have cooperated with ICE officials in obtaining my travel document. On May 19[th], 2016, I was transported to York County prison in PA to

6

> s[i]t with my counselors from Sierra Leone. The meeting took place on . . . May 19th, 2016. There was an ICE official in the room that was recording every discussion that t[ook] place. I've been fully cooperat[ive] with ICE officials.

(*Id.*, at PAGEID#: 6-8). As relief, petitioner seeks immediate release from confinement at the Butler County Jail pursuant to an order of supervision by ICE. (*Id.*, at PAGEID#: 8).

### III. OPINION

Congress has prescribed that once an alien has been ordered to be removed from the United States, "the Attorney General shall detain the alien" and "remove the alien from the United States within a period of 90 days." 8 U.S.C. §§ 1231(a)(1)(A) & 1231(a)(2). Title 8 U.S.C. § 1231(a)(6) further provides in relevant part:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the [90-day] removal period.

By its terms, § 1231(a)(6) "applies to three categories of aliens: (1) those ordered removed who are inadmissible under § 1182, (2) those ordered removed who are removable under § 1227(a)(1)(C), § 1227(a)(2), or § 1227(a)(4), and (3) those ordered removed whom the Secretary [of DHS] determines to be either a risk to the community or a flight risk." *Clark v Martinez,* 543 U.S. 371, 377 (2005). In *Zadvydas v. Davis,* 533 U.S. 678 (2001), the Supreme Court interpreted the provision "to authorize the Attorney General (now the Secretary [of DHS]) to detain aliens in the second category only as long as 'reasonably necessary' to remove them from the country." *Clark,* 543 U.S. at 377 (quoting *Zadvydas,* 533 U.S. at 689, 699). The *Zadvydas* Court held that reading § 1231(a)(6) to authorize indefinite detention would "raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Zadvydas,*

7

533 U.S. at 690. Therefore, the Court "construe[d] the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id.* at 682.

In *Zadvydas*, 533 U.S. at 701, the Supreme Court considered the six-month detention of an alien who is subject to removal due to criminal convictions to be presumptively reasonable. The Court then provided the following guidance in addressing detentions that exceed the six-month presumptively reasonable limit:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

In this case, petitioner does not challenge the removal order that was issued in 2009 or dispute that he is subject to removal to Sierra Leone under 8 U.S.C. § 1227(a)(2) because of his criminal convictions in Ohio. Because petitioner was deemed to be removable under § 1227(a)(2), he falls within the second category of aliens eligible for extended detention under § 1231(a)(6). It is undisputed that, at this point in time, petitioner has been detained longer than the six-month presumptively reasonable period under *Zadvydas*.

As an initial matter, to the extent that petitioner's detention exceeded six months during the period from January to August, 2016, when ICE officials were working with the Sierra Leone Embassy to obtain the requisite travel document for petitioner's removal, petitioner has not met his burden of showing that there was not a significant likelihood of removal in the reasonably foreseeable future. Indeed, it is clear from the record that once the travel document was issued

8

by the Embassy in August 2016, travel arrangements were made by ICE officials for petitioner's removal later that month to Sierra Leone. It is also clear from the record that contrary to petitioner's contention in Ground Four of the petition,[2] the removal did not take place at that time because petitioner would not cooperate with ICE officials. Specifically, petitioner refused to sign "Form I-229(a), Warning for Failure to Depart," which was served on him at the Butler County Jail six days before the scheduled removal date of August 23, 2016. Petitioner also would not cooperate with ICE officials, who arrived at the jail on August 23, 2016 to escort him to the airport for the booked commercial flight to Sierra Leona, by refusing to acknowledge the legitimacy of the travel docket or to sign or place his thumb print on the document as required for identification purposes. Moreover, in contrast to *Zadvydas*, which involved the lengthy detention of aliens who, through no fault of their own, could not be removed from the United States, the reason that petitioner has remained in detention since August 23, 2016 is directly attributable to petitioner's continued refusal to cooperate with ICE officials.

Petitioner is unable to prevail on any argument that his right to due process has been violated to the extent that he has remained in detention during the period following his failure in August 2016 to comply with the first removal attempt and while he continues to refuse to cooperate with ICE for the purpose of scheduling another date for removal. In other analogous cases, courts have uniformly refused to find a constitutional violation and/or have concluded that the removal period is tolled or suspended by the alien's refusal to cooperate. *See, e.g., Balogun v. INS*, 9 F.3d 347, 350-51 (5th Cir. 1993) (and cases cited therein) (holding that the removal period is tolled if the "petitioner by his conduct has intentionally prevented the INS from

---

[2] Petitioner has alleged in Ground Four that he cooperated with ICE officials in obtaining the travel document by attending and answering questions at an interview in May 2016 with officials from the Sierra Leone Embassy. However, although petitioner may have been cooperative with the removal effort *before* the travel document was obtained, it is clear from the record that he has not cooperated with ICE officials *after* the travel document was issued by the Sierra Leone Embassy on or about August 10, 2016.

effecting his deportation"); *Hook v. Lynch*, 639 F. App'x 229, 230 (5th Cir. 2016) (per curiam) (same); *Lakhani v. O'Leary*, No. 1:08cv2355, 2010 WL 3730157, at *2 (N.D. Ohio Sept. 17, 2010) (holding that the petitioner's continued detention was not unconstitutional because the removal period was suspended when the petitioner acted to thwart his removal by refusing to board a series of flights scheduled to return him to Pakistan); *see also Pelich v. INS*, 329 F.3d 1057, 1060-61 (9th Cir. 2003) (holding in accordance with other cited district court decisions that "*Zadvydas* does not save an alien who fails [to cooperate with efforts] to effectuate his removal" for the "self-evident" reason that "the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock"); *Agbanyo v. Cabral*, 518 F. Supp.2d 326, 327-28 (D. Mass. 2007) (dismissing habeas petition brought by an alien subject to a removal order, who had been confined beyond the six-month period set forth in *Zadvydas* and who was not likely to be removed in the reasonably foreseeable future, because the "uncontroverted record evidence demonstrates that the petitioner has not only failed to cooperate, but has actively obstructed efforts to remove him"). In a recent decision upholding the constitutionality of the continued detention of the petitioner, who had refused to board a plane and later refused to even travel to the airport after ICE had obtained the requisite travel document for removal, a district court explained:

> *Zadvydas* did not address another statute that authorizes continued detention of an alien beyond the 90-day removal period. [8 U.S.C.] § 1231(a)(1)(C) provides that: "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien . . . conspires or acts to prevent the alien's removal subject to an order of removal." "Subsequent to *Zadvydas*, numerous courts have held that, when an alien refuses to cooperate in securing his removal, he can be detained under § 1231(a)(1)(C) for longer than the six-month period in *Zadvydas* established as presumptively reasonable under § 1231(a)(6)." *Hydara v. Gonzales*, No 07-cv-0941 PJS/JSM, 2007 WL 2409664, at *2 (D. Minn. Aug. 21, 2007), *aff'd sub nom. Hydara v. Doe*, 324 Fed.Appx. 534 (8th Cir. 2009). "These courts have assumed that *Zadvydas* applies to aliens being detained under § 1231(a)(1)(C) and reasoned that, when an alien obstructs

> his removal, he cannot meet his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* (citing *Lema v. INS,* 341 F.3d 853, 856 (9th Cir. 2003); *Pelich*[, 329 F.3d at 1059-61]; *Davis v. Gonzales,* 482 F.Supp.2d 796, 800-01 (W.D. Tex. 2006); *Powell v. Ashcroft,* 194 F.Supp.2d 209, 212 (E.D.N.Y. 2002)). "The reasoning is that, where the timing of removal is controlled by an uncooperative alien rather than immigration officials, there is no meaningful way to ascertain the likelihood of removal." *Ndenge v. Gonzales,* No. Civ. 07-1726 MJD/JJG, 2008 WL 682091, at* 2 (D. Minn. Mar. 6, 2008) (citing *Lema,* 341 F.3d at 856-57; *Hydara,* 2007 WL 2409664, and *Kanteh v. Ridge,* No. 05-313, 2005 WL 1719217 (D. Minn. June 30, 2005)[(Report & Recommendation), *adopted,* 2005 WL 1705526 (D. Minn. July 19, 2005)]).

*Moses v. Lynch,* No. 15-CV-4168 (PAM/JJK), 2016 WL 2636352, at *3 (D. Minn. Apr. 12, 2016) (Report & Recommendation), *adopted,* 2016 WL 2596020 (D. Minn. May 5, 2016).

In this case, contrary to petitioner's contention in his memorandum in response to respondent's return of writ and motion to dismiss, the travel document issued in August 2016 by the Sierra Leone Embassy in Washington, D.C., which authorizes petitioner's travel to Sierra Leone, appears to be valid and is not due to expire until February 9, 2017. (*See* Doc. 7, Ex. A, ¶ 15 & Ex. 8). Petitioner claims the document is not legitimate because Sierra Leone is not accepting any deportees in light of the Ebola epidemic. However, that allegation has been refuted by HQ RIO Detention and Deportation Officer Joseph Simon, who has averred that removals to Sierra Leone are routine and have "resumed" since the country "was declared Ebola-free by the World Health Organization in November 2015." (Doc. 11, Ex. A, ¶ 13). Therefore, even assuming that *Zadvydas* is applicable to the case-at-hand, petitioner has failed to sustain his initial burden of showing there is a factual basis to substantiate his belief that, absent his own acts of obstruction, there is no significant likelihood he will be removed to Sierra Leone in the reasonably foreseeable future. *Cf. Alzubi v. Tryon,* No. 14-CV-705-JTC, 2015 WL 860792, at *8-9 (W.D.N.Y. Feb. 27, 2015).

Finally, petitioner has not demonstrated that he is entitled to habeas relief on the ground that he has not been provided a "neutral decision-maker" to review his continued custody in violation of his right to procedural due process. There is simply no evidence in the record even remotely suggesting there is any merit to that conclusory claim. *Cf. Atugah v. Dedvukaj*, No. 2:16cv68, 2016 WL 3189976, at *4 (W.D. Mich. May 10, 2016) (Report & Recommendation) (rejecting a similar claim as meritless), *adopted*, 2016 WL 3166600 (W.D. Mich. June 7, 2016), *appeal filed*, No. 16-1862 (6th Cir. June 22, 2016); *Moses, supra*, 2016 WL 2636352, at *4 (holding in an analogous case that in the absence of "some indication . . . that ICE failed to comply with any specific requirements" of custody-review procedures established in the Code of Federal Regulations, petitioner had not demonstrated a violation of his Fifth Amendment right to procedural due process).

Accordingly, in sum, the undersigned concludes that petitioner has not demonstrated that he is entitled to habeas corpus relief under 28 U.S.C. § 2241 because he has not shown that he is currently in ICE custody in violation of the Constitution or laws of the United States.

## IT IS THEREFORE RECOMMENDED THAT:

1. The petitioner's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) be **DENIED**.

2. A certificate of appealability should not issue because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

Date: 11/7/16

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

LAHAI KANU,
    Petitioner,

vs.

SHERIFF BUTLER COUNTY,
    Respondent.

Case No. 1:16-cv-756

Black, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

cbc